# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LASHONDA R. RUCKER,

                **Plaintiff,**

         **v.**                             **Case No. 19-CV-1764**

ANDREW M. SAUL,
**Commissioner of the Social Security Administration,**

                **Defendant.**

## DECISION AND ORDER

## 1. Introduction

Alleging she has been disabled since September 30, 2015 (Tr. 223), plaintiff Lashonda R. Rucker seeks disability insurance benefits. After her application was denied initially (Tr. 101-12) and upon reconsideration (Tr. 113-28), a hearing was held before an administrative law judge (ALJ) on May 16, 2018 (Tr. 41-99). On October 25, 2018, the ALJ issued a written decision concluding that Rucker was not disabled. (Tr. 12-40.) After the Appeals Council denied Rucker's request for review on September 30, 2019 (Tr. 3-8), Rucker filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 8), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Rucker "has not engaged in substantial gainful activity since September 30, 2015, the amended alleged onset date." (Tr. 18.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Rucker has the following severe impairments: "degenerative disk disease, fibromyalgia/unspecified connective tissue disorder, Crohn's disease, obesity, depression, anxiety, and post-traumatic stress disorder (PTSD)." (Tr. 18.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the

2

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Rucker "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 19.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Rucker has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she has additional limitations. She can reach overhead bilaterally with her upper extremities on a frequent basis. She can handle and finger bilaterally with her upper extremities on a frequent basis. She can climb ramps and stairs occasionally. She can never crawl [sic] ladders, ropes, or scaffolds. The claimant can never work at unprotected heights nor around moving mechanical parts. She can never operate a motor vehicle in the workplace. With regard to understanding, remembering, and carrying out instructions, the claimant is limited to performing simple, routine, and repetitive tasks. With regard to the use of judgment in a workplace, the claimant is limited to making simple work-related decisions. The claimant needs to be in a work environment that does not require constant interaction with other people. More specifically, she would be able to interact appropriately with supervisors on a frequent basis but would only be able to interact appropriately with co-workers and the general public on an occasional basis. Further, the claimant can tolerate occasional changes in a routine

work setting. In addition to normal breaks, the claimant will be off task less than 10 percent of the time in an 8-hour workday.

(Tr. 22-23.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Rucker "is unable to perform any past relevant work." (Tr. 32.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, relying on the testimony of a vocational expert, the ALJ concluded that Rucker could work in jobs such as "production inspector" (DOT 539.485-010), "machine feeder" (DOT 690.685-194), or "bench assembly jobs" including, for example, "lamp shade assembler" (DOT 739.684-094). (Tr. 33.)

## 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Mental RFC

#### 4.1.1. Medical Opinions

The ALJ afforded "little weight" to all the medical opinions regarding Rucker's mental RFC. Rucker contends that this means the ALJ necessarily interpreted the medical evidence on his own and impermissibly played doctor.

An ALJ is not required to adopt any medical source's opinion as to the claimant's RFC. The "claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R § 404.1527(d)). Thus, notwithstanding the fact that it relies in part on an assessment of medical evidence, when an ALJ determines a claimant's RFC he is not impermissibly playing doctor.

This is not a case like *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014), upon which Rucker relies, where the court criticized the ALJ for interpreting the results of an MRI in "barely intelligible medical mumbo-jumbo" and translated those results into the claimant's RFC. The ALJ here gave good reasons for the weight he afforded the opinions relating to Rucker's mental RFC. He explained that the consultative examination predated Rucker's amended onset date, and since that examination Rucker's conditions worsened. (Tr. 30.) The state agency consultants did not have the benefit of the complete record, and instead based their opinions largely on the consultative examination. (Tr. 31-32.) Rucker does not argue that the ALJ erred in discounting these opinions.

On the opposite end of the spectrum, Dr. Filoreta Diana Udrea, who had treated Rucker since October of 2017, opined that Rucker would have extreme limitations in "concentration and persistence," in her ability to work without interruptions from symptoms, and in her "[a]bility to sustain work effort, duties, and maintain regular attendance and punctuality across a work week without interruptions from psychologically based symptoms." (Tr. 1947.) She also opined that Rucker would have marked limitations in her "[a]bility to accept criticism or ask for assistance from supervisor," in her "[a]bility to learn and follow work rules," in her "[a]bility to respond to changes in the work setting," and in her "[a]bility to adapt to the demands and pressure of a simple, routine work setting." (Tr. 1947.) Dr. Udrea estimated that Rucker

would be absent from work at least four times per month. (Tr. 1948.) Rucker argues that the ALJ erred by not affording Dr. Udrea's opinion controlling weight.

An ALJ is required to give a treating source's opinion controlling weight only if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is consistent with substantial evidence in the record." *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)). The ALJ provided adequate reasons for not giving Dr. Udrea's opinion controlling weight. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." (quoting 20 C.F.R. § 404.1527(d)(2)); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("an ALJ must 'minimally articulate his reasons for crediting or rejecting evidence of disability'" (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)). Specifically, the ALJ noted that Dr. Udrea "had only examined [Rucker] a few times prior to completing her form and was still in the process of adjusting [Rucker's] medication[,]" and "the marked and extreme limitations identified are not consistent with the evidence showing [Rucker] was able to learn and use some coping exercises." (Tr. 31.) The ALJ further found that the marked and extreme limitations were

> not consistent with [Rucker's] ability to maintain a logical thought process in spite of some limitations in concentration and mild to moderate psychomotor retardation during only one exam (Exhibit 27F at 185). By the next month, [Rucker] showed an improvement in her concentration,

> consistent with new medication starting to become effective (Exhibit 27F at
> 198, 199).

(Tr. 31.)

The ALJ was not required to give Dr. Udrea's opinion controlling weight simply because he also discounted the other medical opinions in the record. And although Rucker points to evidence supporting certain limitations in her mental functioning (ECF No. 18 at 9-10), the issue is not whether she is limited but the degree of those limitations. Rucker has not cited any authority that required the ALJ accept Dr. Udrea's opinion regarding the severity of Rucker's limitations.

Having not afforded Dr. Udrea's opinion controlling weight, the ALJ was required "to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)). The ALJ adequately did so when he acknowledged that Dr. Udrea was Rucker's treating specialist but noted that Dr. Udrea had examined Rucker only a few times before offering her opinion, Rucker was still adjusting to medication, Dr. Udrea gave little explanation for her opinions, and the marked and extreme limitations were inconsistent with Rucker successfully learning and using coping strategies, maintaining logical thought processes, and improved concentration. (Tr. 31.)

Rucker has not shown that the ALJ erred in his assessment of the medical opinions.

### 4.1.2. Interaction

Rucker argues that "the specific accommodations the ALJ included in the RFC assessment were legally and factually insufficient to capture Ms. Rucker's limitations as a result of her mental impairments." (ECF No. 18 at 9.) She notes that the ALJ failed to explain the seemingly contradictory finding that she could have frequent interaction with supervisors but only occasional interaction with coworkers (ECF No. 8 at 9), and argues that she is more limited in her ability to interact with others than the ALJ found.

The Commissioner acknowledges that the unexplained contradiction in the ALJ's finding regarding Rucker's ability to interact with supervisors as compared with coworkers was an error. But the Commissioner argues that the error was harmless because the jobs the vocational expert identified do not require significant interaction with a supervisor. (ECF No. 23 at 6.)

An error is harmless if the court can predict with great confidence that the result on remand would be the same. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Rucker notes in reply that neither the Dictionary of Occupational Titles nor the vocational expert's testimony identifies the amount of interaction Rucker would have with a supervisor in the jobs the vocational expert said Rucker could perform. (ECF No. 24 at 4.) Rather, the hypothetical posed to the vocational expert asked him to consider a person who could have frequent contact with supervisors and occasional interaction with coworkers or the general public (Tr. 88), *i.e.*, the restrictions the ALJ included in his RFC.

9

In other words, the Commissioner has not pointed to any evidence that the jobs the vocational expert testified Rucker could perform require only occasional interaction with a supervisor (or that a limitation to only occasional interaction with a supervisor would not be a work preclusive limitation for Rucker). Consequently, the Commissioner has failed to show that the acknowledged error by the ALJ was harmless, and remand is required.

### 4.1.3.  Concentration, Persistence, and Pace

At Step Three the ALJ found that Rucker had a moderate limitation in concentrating, persisting, and maintaining pace. (Tr. 22.) In the hypothetical he presented to the vocational expert the ALJ asked him to consider someone who "would be limited to performing simple, routine, and repetitive tasks" and who would be off task no more than ten percent of the workday. (Tr. 88-89.) Rucker argues that these limitations do not adequately encompass her limitations in concentration, persistence, and pace. (ECF No. 18 at 11-16.)

The bulk of Rucker's argument addresses only concentration. The Commissioner in response argues that Rucker has abandoned any argument as to persistence or pace, and a limitation to simple, routine, and repetitive tasks adequately accounts for a moderate limitation in concentration. (ECF No. 23 at 7.) Rucker in reply disputes that she abandoned any argument regarding persistence or pace. (ECF No. 24 at 5.)

Although the argument is not particularly well developed, Rucker sufficiently alleges that the ALJ failed to consider her limitations in concentration, persistence, and pace. (ECF No. 18 at 11-12.) The court cannot say she has not forfeited her argument as to persistence and pace.

The ALJ must apprise the vocational expert of all of the claimant's symptoms, including limitations in concentration, persistence, or pace. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). However, an ALJ need not explicitly use the words "concentration, persistence, and pace" to apprise the vocational expert of the claimant's limitations in these domains. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002)). However, "someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). But simply limiting the claimant to "unskilled work" is insufficient. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

"[I]n most cases 'employing terms like simple, repetitive tasks on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace,' and thus, alone, are insufficient to present the claimant's limitations in this area." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (quoting *O'Connor-Spinner*, 627 F.3d at 620) (internal citation omitted).

A limitation in concentration might not preclude a job that is reduced to rote. But even a repetitive job would seem to require concentration if, for example, the job involves working with dangerous machinery, as would be the case with the "machine feeder" job the vocational expert identified, which is more specifically a "grinding-machine operator" who feeds pearl shells into a machine for the purpose of making buttons, *see* DOT 690.685-194.

Jobs that are "simple, routine, and repetitive" often involve productivity or efficiency expectations which require an employee to perform persistently and at a designated pace. For example, the vocational expert identified the job of "lamp-shade assembler" as a potential job Rucker could perform, but such a job would likely come with production quotas that would be impacted by a moderate limitation in persistence and pace. *See* DOT 739.684-094. Same, too, with the weight tester, *see* DOT 539.485-010, and grinding machine operator, *see* DOT 690.685-194, the other jobs identified by the vocational expert.

Case 2:19-cv-01764-WED   Filed 02/16/21   Page 12 of 21   Document 25

Limiting Rucker to performing simple, routine, and repetitive tasks did not adequately encompass a moderate limitation in concentration, persistence, and pace. Nor does the limitation that she would be off task up to ten percent of the workday account for her moderate limitation. Setting aside the fact that the ten percent limitation appears to have been chosen arbitrarily for no reason other than it is the maximum an employer will tolerate, the ALJ stated that Rucker would require this time off task because she required additional trips to the bathroom. (Tr. 26-27.) The limitation was not attributable to her moderate limitation in concentration, persistence, and pace. Accordingly, remand is necessary to permit the ALJ to reassess Rucker's RFC in light of her moderate limitation in concentration, persistence, and pace.

### 4.1.4. Absenteeism

Rucker argues that the ALJ did not adequately explain why he did not credit medical opinions regarding the rate at which she would be absent from work. (ECF No. 18 at 16.) The Commissioner does not explicitly address this argument in response but states, "Plaintiff's argument that the ALJ did not explain why he rejected the opinion evidence that plaintiff's absenteeism would cause her to be absent from work three or four days a month, is subsumed under the ALJ's consideration of the opinion evidence discussed above." (ECF No. 23 at 9.)

It is unclear what the Commissioner intends with this statement. The court finds it unnecessary to belabor the point because the court otherwise finds remand necessary.

On remand, the ALJ must also assess whether Rucker's impairments will result in her being absent from work and if any such absenteeism will affect her employability.

## 4.2. Physical RFC

Rucker presents four broad criticisms of the ALJ's assessment of her physical RFC:

- "[T]he ALJ did not explain why he rejected Ms. Fox's opinion that Ms. Rucker required a sit-stand at-will option as well as an unscheduled 15-minute break daily" (ECF No. 18 at 17-18);

- "[T]he ALJ did not explain why [Fox's opinion that Rucker would require unrestricted bathroom access] was not consistent with the record and thus adopted in the RFC assessment beyond summarizing some of Ms. Rucker's treatment for GI issues" (ECF No. 18 at 20);

- "The ALJ did not specifically address [Rucker's allegation that extended sitting caused pain and that she could sit ten minutes without shifting and could sit for 1-3 hours in a day] and explain whether he accepted or rejected it" (ECF No. 18 at 18); and

- "[T]he ALJ did not explain the basis for concluding that Ms. Rucker was accommodated by limitations to handling, fingering, and reaching overhead bilaterally with her upper extremities" (ECF No. 18 at 21).

### 4.2.1.  Caroline Fox

With respect to the ALJ's consideration of the opinion of Caroline Fox, a physician assistant who treated Rucker on a few occasions for Crohn's disease, the ALJ afforded her opinion "partial weight." (Tr. 29.) As reasons for discounting her opinion the ALJ noted that Fox is not an acceptable medical source, she provided little explanation for her statements, and "she provided no explanation for why the claimant would miss 3 days of work per month." (Tr. 30.) The ALJ found the alleged rate of absenteeism to be

14

inconsistent with Rucker delaying treatment for her Crohn's disease. (Tr. 30.) Finally, the ALJ noted that it was unclear if the limitations identified in Fox's opinion would persist given that Rucker had recently started treatment. (Tr. 30.)

Although the ALJ did not explicitly refer to Fox's specific opinions that Rucker would need a sit / stand option, an unscheduled break, and unrestricted bathroom access, Rucker has not shown that the ALJ's failure to do so was error. The authority she cites does not support her assertion. The general reasons the ALJ provided for discounting Fox's opinion overall were good reasons for discounting these specific aspects of her opinion, and that was all that was required. *See* 20 C.F.R. § 404.1527(f)(2).

### 4.2.2. Sitting

With respect to Rucker's alleged sitting limitation, the Commissioner responds that the ALJ explicitly noted her claimed limitation and then proceeded with a detailed discussion in accordance with SSR 16-3p explaining why he concluded that her alleged symptoms were not as severe as she alleged. (ECF No. 23 at 11-12.) In reply, Rucker emphasizes that certain objective evidence, such as her obesity and back problems, supported her claim that she was unable to sit for long periods. (ECF No. 24 at 12.)

Rucker has not shown that the ALJ erred in his assessment of her ability to sit. Notably, she has not pointed to a medical source who stated that limitations in her ability to sit precluded sedentary work. *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019)

("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error.") (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

To the extent that her alleged limitation in sitting is a matter of symptom severity, meaning that SSR 16-3p would apply, Rucker has again failed to demonstrate error. An ALJ's assessment under SSR 16-3p may be upset only if it is patently wrong. *See John S v. Saul*, No. 1:19-cv-01008-DLP-JRS, 2020 U.S. Dist. LEXIS 14978, at *26 (S.D. Ind. Jan. 27, 2020) (citing *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)). Rucker has not shown that the ALJ's assessment was patently wrong.

Nor has Rucker shown that the ALJ's assessment is unsupported by substantial evidence. The fact that the ALJ did not discuss evidence supporting the plaintiff's claim does not demonstrate that the ALJ erred. *Frankovis-Miesfeld v. Saul*, No. 19-CV-1842, 2021 U.S. Dist. LEXIS 14064, at *14 (E.D. Wis. Jan. 26, 2021). It is to be expected that the record will contain conflicting evidence. *Frankovis-Miesfeld v. Saul*, No. 19-CV-1842, 2021 U.S. Dist. LEXIS 14064, at *14 (E.D. Wis. Jan. 26, 2021). Only if the ALJ engaged in an impermissible cherry picking—ignoring a compelling line of contrary evidence—is remand required. *See Pflughoeft v. Saul*, No. 19-CV-1548, 2020 U.S. Dist. LEXIS 211269, at *14 (E.D. Wis. Nov. 12, 2020) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (discussing impermissible cherry-picking)). Two contrary conclusions may each be

supported by substantial evidence. *Wolvin v. Saul*, No. 18-CV-1285, 2019 U.S. Dist. LEXIS 171953, at \*6 (E.D. Wis. Oct. 3, 2019).

### 4.2.3. Handling, Fingering, and Reaching

In his RFC finding the ALJ stated that, "to limit aggravation of cervical pain and numbness in the hands, the claimant can only reach overhead bilaterally with her upper extremities on a frequent basis and can only handle and finger bilaterally on a frequent basis." (Tr. 26.) Rucker argues that the ALJ erred by failing to explain why, given her allegations regarding her symptoms, a further limitation was not appropriate. (ECF No. 18 at 21.) She continues, "The ALJ, as a layperson, could not have known, and did not explain, whether frequently reaching and handling for 5.33 hours daily would have aggravated Ms. Rucker's cervical problems and fibromyalgia as well as her hand numbness."

Rucker is correct that, as a layperson, the ALJ was limited in his ability to assess whether frequent reaching would aggravate her symptoms. But this argument just underscores that Rucker's ability to handle, finger, and reach is in large part a medical determination. As with her ability to sit, Rucker has not pointed to any medical opinion that she was more limited than the ALJ found. Consequently, the court cannot say the ALJ erred. *See Frankovis-Miesfeld v. Saul*, No. 19-CV-1842, 2021 U.S. Dist. LEXIS 14064, at \*21 (E.D. Wis. Jan. 26, 2021) ("Absent a medical opinion indicating that [the plaintiff] was limited in her use of her arms, fingers, or hands, the ALJ did not err.").

### 4.3. Remaining Arguments

Rucker's remaining arguments are unclear. The heading of the final section of her initial brief suggests that she will be arguing that the ALJ erred in his assessment of her subjective impairments, *i.e.*, the ALJ failed to comply with SSR 16-3p. (ECF No. 18 at 23.) But in the first sentence she argues that the ALJ erred by failing to consider the cumulative effect of her impairments. (ECF No. 18 at 23.) She then proceeds to argue that the ALJ failed to consider her assertion that she needed to lie down to rest two to three times a day for an hour each time. (ECF No. 18 at 23.) But then she notes that the ALJ tended to introduce his discussion of specific impairments with an observation that the evidence is not consistent with the frequency and severity of Rucker's symptoms. She argues that "the ALJ did not logically bridge that conclusion with his explanations." (ECF No. 18 at 24.) Rucker's reply, the relevant section of which is captioned "The Symptom Evaluation Is Not Supported By Substantial Evidence" (ECF No. 24 at 14-15), does not clarify the nature of her arguments.

The court cannot speculate as to the nature of a party's argument or fill in gaps. It is the plaintiff's burden to show that the ALJ erred. Rucker has failed to do so.

Specifically, Rucker has not shown that the ALJ failed to consider the cumulative effect of her impairments.

As for her alleged need to lie down, Rucker has not shown that the ALJ was required to single-out this alleged limitation in his explanation as to why he concluded

that her symptoms were not as severe as she alleged. The ALJ was not required to walk through each alleged subjective limitation (even a limitation that would be work preclusive) and explain why he concluded it was not as severe as alleged; rather, he was permitted to address her symptoms broadly. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013). The ALJ's explanation for discounting Rucker's assertions was sufficient under SSR 16-3p, was detailed enough for the court to trace his reasoning, and was not patently wrong.

As to Rucker's assertion that the ALJ did not adequately explain how the evidence was inconsistent with her claims regarding the severity of her symptoms, she develops an argument only with respect to her Crohn's disease. Perhaps the most significant symptom of Crohn's disease in terms of employability that Rucker alleged was a need to frequently use the bathroom. The ALJ discounted Rucker's assertion in part by observing that Rucker had not suffered from weight loss. This was not an impermissible medical observation but merely an observation consistent with Listing 5.06, which notes that "[i]nvoluntary weight loss of at least 10 percent from baseline" is consistent with inflammatory bowel disease. While the absence of weight loss is not necessarily inconsistent with inflammatory bowel disease, *cf.* listing 5.06 (noting that the B criteria of the listing may be met with two of six factors, one of which is "[i]nvoluntary weight loss of at least 10 percent from baseline …"), its absence is nonetheless relevant in assessing

the severity of her symptoms, and particularly whether Rucker was using the bathroom as often as she alleged.

Rucker then asserts, "The ALJ repeated this error in discretely assessing Ms. Rucker's lumbar spine issues, fibromyalgia, and obesity." (ECF No. 18 at 24.) But, aside from showing that he used similar language when introducing his discussion of these impairments, Rucker does not develop any argument as to these impairments. Consequently, any argument is forfeited. *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019). The court does not find any further error in the ALJ's decision.

## 5. Conclusion

The ALJ erred when he failed to explain the basis for his conclusion that Rucker would be able to have frequent interaction with her supervisors but only occasional interaction with her coworkers or the public. The ALJ also failed to account for Rucker's moderate limitation in concentration, persistence, and pace. For these reasons, remand is required. On remand, it will also be necessary for the ALJ to assess Rucker's alleged absenteeism.

A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). Issues remain unresolved, including, for example, Rucker's ability to interact with

others or her ability to sit (*compare* Tr. 1018 (Fox's opinion that Rucker could sit for at least six hours per day) *with* 262 (Rucker's statement she could sit for only one to three hours per day); *cf.* Tr. 72-73 (Rucker testifying she may spend up to 18 hours a day in the bathroom due to her Crohn's disease)). Moreover, a vocational expert has not opined as to whether there are jobs Rucker could perform given a moderate limitation in concentration, persistence, and pace, and her other limitations. On remand, it may be necessary to obtain an additional psychological consultative examination or review. The exam here predated Rucker's amended onset date. (Tr. 30.) The state agency psychological consultants, who did not have the benefit of the complete record, then largely relied on this consultative examination. (Tr. 31.)

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of February, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge